[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal from a decision of Family Support Magistrate Reynolds concerning the arrearage in child support due from the respondent to the petitioner. Following an evidentiary hearing on November 4, 1997, the magistrate issued a written decision, filed on February 26, 1998, in which the magistrate determined that the CT Page 751 net arrearage owed to the petitioner was two thousand, nine hundred and twelve ($2,912.05) dollars and five cents as of September 2, 1997. The petitioner filed an appeal from the magistrate's decision on March 13, 1998.
At the outset, the court notes that the respondent filed a motion to dismiss the appeal on the bases that it was untimely filed. In fact, it was filed fifteen days after the magistrate's decision was filed in the clerk's office. Confronted with the petitioner's response that she had not, in fact, received timely notice of the magistrate's decision, the court conducted an evidentiary hearing and found that, indeed, because of the absence of personnel from the clerk's office, and contrary to the marginal notation on the magistrate's decision that notices were sent to the parties on February 26, 1998, notice was not, in fact, mailed to the petitioner on February 26, 1998. Instead, it was given to her in hand by a member of the clerk's office on February 27, 1998. Her appeal was filed within fourteen days of this date. Confronted with this evidence, the court denied the respondent's motion to dismiss, reasoning that the filing of an appeal one day late was justified because the petitioner had not received timely notice of the magistrate's decision and that the petitioner had filed her appeal within fourteen days of the date on which meaningful notice was issued to her.
The right to appeal from an order of a family magistrate is created by Connecticut General Statute 46b-231(n) which states, in part: "Proceedings for such appeal shall be instituted by filing a petition and payment of a fifty-five dollar filing fee in superior court for the judicial district in which the decision of the family magistrate was rendered not later than fourteen days after filing of the final decision . . ." While, in Shermanv. Sherman, 41 Conn. App. 803 (1996) this statutory language requiring the inclusion of a petition in the initial papers was construed as mandatory and not directory, procedural due process requires that the fourteen day time period set forth in the statute should be read to include the requirement that timely notice of the magistrate's decision must be given to the parties. In Kudlacz v. Lindberg Heat Treating Company, 49 Conn. App. 1, 3
(1998), the Appellate Court stated that the ten day period for appealing from a decision of the worker's compensation commissioner "begins to run on the day on which the party wanting to appeal is sent meaningful notice of the commissioner's decision." The fact that the right to appeal from a family magistrate's decision is statutory does not abrogate the CT Page 752 requirement that the parties be given notice of the magistrate's decision. In Kron v. Thelen, while construing C.G.S. 45-289 relating to appeals from the Probate Court, the Supreme Court stated: "We have held that `it is a principle of natural justice of universal obligation, that before the rights of an individual be bound by a judicial sentence he shall have notice . . . of the proceedings against him. (citations omitted)" 178 Conn. 189, 194. The Kron court continued, "Fundamental tenets of due process, moreover, require that all persons directly concerned in the result of an adjudication be given reasonable notice and the opportunity to present their claims or defenses." Id.
Also, the fact that the statute, by its own language, does not require the issuance of notice of the magistrate's decision to the parties, is unavailing to the respondent. Confronted with a similar situation in Kron, the court opined: "Section 45-289 does not specifically require the Probate Court to notify interested parties of its decision or order following a hearing where, as here, the court reserves its determination of the issues involved. It does not follow, however, that the failure of a statute expressly to provide for notice makes possible, by implication, an effective probate decree not based upon notice. (Citation omitted) In construing a statute, common sense must be used and courts must assume that a reasonable and rational result was intended. (citations omitted)" Id. 192.
Finally, the court in Kron stated with relevance to the instant issue: "While it is true, as the trial court held that, provisions in statutes fixing a time within which to take an appeal are designed to secure a speedy determination of the issue involved (citation omitted) it is manifestly more compelling that `the right of appeal, if it is to have any value, must necessarily contemplate that the person who is to exercise the right be given the opportunity of knowing that there is a decision to appeal from and of forming an opinion as to whether that decision presents an appealable issue. Until the prospective appellant has either actual or constructive notice that a decision has been reached, the right to appeal is meaningless.'" (citations omitted) Id, 193.
The petitioner's appeal has been timely filed.
With her appeal, the pro se petitioner filed a two page written statement setting forth her claims. While this document is not captioned "Petition", it adequately notifies the CT Page 753 respondent and the court of the petitioner's claims. "The function of the petition is to make the court and opposing parties aware of the alleged error or defect from which the aggrieved party seeks redress." Sherman v. Sherman,41 Conn. App. 803, 806 (1996). To this extent, the petitioner's document complies with the requirement that the appeal be accompanied by a petition.
The petitioner's appeal is properly before the court. She is an aggrieved part who has appealed from final orders of the magistrate.
The petitioner's appeal is, however, a wholesale attack on the magistrate's decision. She seeks, inter alia, a revaluation of the entire file and a special hearing. Neither of those claims raise a justiciable appellate issue. This file has a long and tortious past, beginning with the parties marital dissolution on April 10, 1992 and continuing to the present. It is not the function or province of this court to review or assess all prior determinations in this matter but only those which have been timely brought before the court. In that category, the court finds the following issues: (1) The magistrate's decision giving the respondent, as credit against delinquent child support, sums the petitioner purportedly owes him as part of the marital dissolution property settlement, (2) The magistrate's decision voiding a prior order of child support on the basis that the order was entered at a time when no paternity adjudication had been made, and, (3) the claim that the magistrate's decision for current support was unreasonably low considering the respondent's past earnings and the earning capacity. The court reviews these issues in the inverse order of presentation.
In pertinent part, C.G.S 46b-231 states: "The Superior Court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the decision of the family support magistrate is (A) In violation of constitutional or statutory provisions; (B) in excess of the statutory authority of the family support magistrate; (C) made upon unlawful procedure; (D) affected by other error of law; (E) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record, or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
With respect the amount of current support ordered by the magistrate, a review of the record fails to demonstrate that the CT Page 754 magistrate's decision was deficient in any of the enumerated ways.
With respect to the magistrate's decision voiding a prior order of child support for a third child, the following information gleaned from the file is pertinent to the court's discussion. When the marriage was dissolved on April 10, 1992, the parties had two children. Approximately five months later, on September 23, 1992, the petitioner give birth to a third child. On March 2, 1993, she filed a motion to modify the judgment, requesting an order of support for all three children. In response to this motion, the court, Barall, J., on October 19, 1994, modified the child support provision of the judgment to order the respondent to pay two hundred and fifty-two ($252) dollars a week for the support of three minor children. A transcript of this hearing reveals that the respondent, though absent, had received service of the motion to modify earlier in the year and had received notice of the October 19th hearing. The file reveals that the respondent received notice of the court's orders on October 29, 1994. He filed no appeal.
On August 6, 1996, approximately a year and a half later, during which interval there were numerous contempt hearings, the respondent filed a motion to modify the (then) current support orders, claiming that he was not the father of the third child. Subsequently, on March 13, 1997, a judgment of paternity, based on the respondent's acknowledgment, was entered, finding the respondent to be the father of the third child.
In her decision, the magistrate stated that the court's October 19, 1994 order for the support for three children was void because their had been no determination of paternity by that time. While the court disagrees with this finding, it is inconsequential to the parties since the magistrate properly found, based on the court's subsequent finding of the respondent's paternity, that his obligation existed at the time of the October 19, 1994 order. cf. C.G.S. 46b-160. To the extent that the petitioner is claiming that the respondent's obligation should date from three years prior to her filing a motion to modify, or from the date of the child's birth, such a claim is tantamount to a late appeal from the non-retroactivity of Judge Barall's October 19, 1994 order. As such, the claim is not properly before the court.[1]
The court agrees with the petitioner's claim that the CT Page 755 magistrate improperly affected the child support arrearage by considering and giving the respondent a credit for a property settlement portion of the judgment. Analysis of this claim requires some historic recitation.
When the marriage was dissolved, the parties entered into an agreement which provided, in part, that:
"It is agreed that the husband shall Quit Claim all of his right, title and interest in and to the family home to the wife and the wife shall agree to pay and save the husband harmless from all mortgages thereon and expenses of the home."
"The wife shall Quit Claim all of her right, title and interest in and to the Time Share to the husband. The husband further agrees that, for as long as he continues to own the Time Share, he shall allow the wife the use of the Time Share one week per year, every other year, beginning with the year 1993, upon her paying one half of the expenses for the Time Share for that particular year that she uses it."
"The wife shall execute a Promissory Note to the husband, secured by a mortgage on the family home, in the amount of $18m500, together with interest at the rate of 7% per annum and payable at the earlier of the following events: a. remarriage of the wife;"
"b. wife's cohabitation with a member of the opposite sex, as husband and wife;"
"c. youngest child reaching the age of 18;"
"d. sale of the home; and/or"
"f. failure to use the home as the principal residence for herself and the children;"
"8. Debts: Except as specified below, each of the parties shall be solely responsible for any of their own debts listed in their names at the times of the final hearing on this matter and shall fully indemnify and hold the other party harmless therefrom. Each of the parties shall be responsible for the following debts:"
"Husband's debts: Visa $1,800, Discover $1,900, Peoples Bank CT Page 756 2,000, his parents $9,000"
"Wife's debts: Visa $2,800, PO Credit Union $7,500, Department Stores $1,000, Master Card $3,500."
"The obligation to pay any such debt shall be in the nature of an alimony award and shall not be dischargeable in bankruptcy." cf. Judgment, dated April 10, 1992.
In the memorandum of decision Magistrate Reynolds noted that the Support enforcement unit had determined that the respondent owed the plaintiff, as child support arrearage, the sum of ten thousand, eight hundred and twenty-six ($10,826) dollars as of September 3, 1997. This finding is not clearly erroneous. To the contrary, it is well supported by a review of the file. The court finds problematic, however, the magistrate's next step in determining the net arrearage due to the petitioner. The magistrate stated, "The plaintiff owes to the defendant $7,913.95 pursuant to the dissolution judgment (i.e. $22,913.95 — $15,000.00)" The magistrate concluded, "5. The net arrearage owed to the plaintiff is $2,912.05 as of 9/2/97."[2]
This finding is not supported by the facts or by relevant decisional law. Additionally, this determination was beyond the magistrate's authority.
The magistrate found that when the petitioner appeared before Magistrate Steele on September 6, 1995, pursuant to her motion for contempt regarding past due child support, the petitioner stated that she was waiving her claim to an arrearage because while her former husband then owed her sixteen thousand, five hundred and fifty-seven ($16,557) dollars in past due child support, she owed him the sum of fifteen thousand ($15,000) dollars from the sale of the house. A review of the transcript does not support a finding that the petitioner waived her claim to the arrearage. Indeed, on September 6, 1995, when the respondent failed to be in court, a capias was issued for his arrest. While the petitioner indicated a willingness to waive the arrearage so that the respondent would remain current in his child support obligation, her offer of a waiver was never complete. Nor was it accepted.
While Magistrate Steele made no orders regarding any arrearage due to the petitioner when both parties next appeared before him on November 8, 1995, Magistrate Ginsburg found an arrearage of CT Page 757 five thousand and forty-six ($5,046) dollars owing to the petitioner on January 3, 1996, approximately two months later. This amount was carried forward and built upon as the respondent repeatedly failed to fully comply with the court's orders for payment of child support. It is interesting that by motion dated March 27, 1996, the respondent moved to have the petitioner held in contempt for failure to pay him the sum of eighteen thousand, five hundred ($18,500) dollars plus seven (7%) percent interest upon the happening of contingencies relating to the former family residence. In this motion, he claimed that she then owed him twenty-four thousand, two hundred and twenty-five ($24,225) dollars. Though the respondent didn't pursue this motion, it's filing is evidence that he was no party to a waiver agreement with the petitioner. From his perspective at the time, he didn't give up his right to payment pursuant to the property settlement in return for relief from a past due child support obligation. Indeed, at the November 4, 1997 hearing before Magistrate Reynolds, counsel for the respondent disavowed any quid pro quo. Counsel stated, "I'm not claiming that he should have been given a credit. I mean that money properly belongs to him. The plaintiff, I think, at her own risk, decided to give him a credit, and it's not even in the proper amount." Transcript of hearing, November 4, 1997. At this hearing, the facts regarding the disposition of the parties' former marital residence became less clear. While the petitioner had told Magistrate Steele on September 6, 1995 that she had sold the house, that information was amplified at the November 7, 1997 hearing when she reported that the house had, in fact, burned to the ground. She stated that when she sold the house, it was a burned shell. She also reported to the magistrate that because respondent had not paid the liabilities he had assumed in the judgment, she had to pay them.
Even if the petitioner had voiced a willingness to forgive the arrearage at one point in return for a credit against the property settlement regarding the house, it was err for the magistrate to reduce the child support arrearage by any such credit.
It is unclear whether, if the respondent had pursued a motion for contempt against the petitioner for her failure to pay him in accordance with the terms of the property settlement, he would have been entitled to any recovery, given the likely application of the "clean hands" doctrine to his quest, and under the circumstances of the demise of the house and the petitioner's CT Page 758 claim that he had failed to pay certain liabilities he had undertaken to pay as part of the judgment. cf. Eldridge v.Eldridge, 224 Conn. 523 (1998); Pappas v. Pappas, 224 Conn. 523
(1973). By crediting the respondent with a sum uncertainly due him from the petitioner, the magistrate has bestowed a benefit upon him that he might not otherwise have directly obtained.
Finally, in granting this credit, the magistrates acted beyond her authority. C.G.S 46b-231 sets forth the authority of magistrates to act. In sum, magistrates hear and determine matters involving child and spousal support, including modifications and contempt matters, actions for interstate enforcement of child and spousal support, paternity matters, and custody and visitation agreements when ancillary to matters properly before them. Magistrates are not authorized by statute to adjudicate the property rights of parties attendant to a marital dissolution. An order issued by a magistrate beyond the magistrate's authority is improper. Sierra v. Lozada,31 Conn. App. 114 (1993). In this case, the magistrate's order crediting the respondent with an amount purportedly owed the respondent by the petitioner was beyond the scope of her authority. While the magistrate properly found the gross arrearage owed the petitioner by the respondent, it was err to reduce this sum by any amount purportedly due to the respondent from the petitioner by the terms of their marital dissolution judgment.
Accordingly, the appeal is sustained as to the determination of the arrearage and the matter is remanded to the magistrate for a finding not inconsistent with this memorandum.
Bishop, J.